**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dolores MILSTEAD, Defendant-Appellant.**

No. 81–3056.

United States Court of Appeals, Fifth Circuit.

April 2, 1982.

Rehearing Denied May 14, 1982.

---

Richard Haynes, Jan Fox, Houston, Tex., for defendant-appellant.

Fredericka L. Homberg, Michael Schatzow, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

PER CURIAM:

Appellant Milstead, convicted of various counts of conspiracy to embezzle, aiding and abetting embezzlement, and making false statements to obtain loans from a national

bank, assigns five errors on her appeal to ·us. The basic facts of her case may be simply stated, and we commence by doing so.

In 1974, Milstead, a part-time office worker, was referred by her employer to one Victor Lota, vice-president and loan officer of a national bank, for a small loan she required. A series of loans, consolidated and refinanced as they came due and pyramiding into nearly One Hundred Thousand Dollars, together with an intimate personal relationship between Milstead and Lota, ensued over the next three or four years. Milstead acquired various luxury items—jewelry, furs and expensive automobiles—and made gifts of money and tangibles to Lota. About the beginning of 1978, bank management placed restrictions on Lota's powers, limiting the amount that he could lend any one person. Lota therefore commenced making loans to Milstead in the names of various relatives and acquaintances of hers furnished by her, she signing their names to the loan papers without their knowledge or authorization and rebating to him in various ways. By the time these matters had run their course, in January of 1980, Lota had received several hundred thousand dollars in kick-backs, Milstead almost a million in loans, and the bank had "lent" close to Two Million Dollars to Milstead in one name or another. When the scheme came to light, Lota turned state's evidence, entering into various plea bargains and testifying against Milstead at her trial.

Milstead disputed little or none of the above. Her defense was that, lovestruck and in Lota's power, her state of mind during the playing out of the scheme was such as to preclude her having possessed the specific intent requisite to committing the crimes charged. A principal point of her appeal concerns the refusal of the trial court to give a requested instruction in this regard, and to this we now turn.

The instruction requested was as follows: You may consider whether or not the Defendant had a good faith belief that what she was doing was legal in determining whether or not she acted wilfully and knowingly.

■ Refusal to deliver a requested instruction is reversible error only if the instruction (1) is substantially correct, (2) is not substantially covered by others delivered and (3) concerns an important point in the trial, so that the failure to give it seriously impaired the defendant's ability to present a given defense. *United States v. Grissom*, 645 F.2d 461 (5th Cir. 1981). Whether or not the other necessary elements laid out in *Grissom* may be present here, it is plain that the second is not. The office of such a charge as that requested is to remind the jury that crimes charged are not such as can be committed by one proceeding upon innocent motives, that each requires, as an element of it, that the actions constituting it be taken voluntarily and with a specific intent. A charge to this precise effect was given by the court and later, at Milstead's request, repeated:

The crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent as the term implies means more than the general intent to commit the act. To establish specific intent the Government must prove that the defendant knowingly did act or acts which the law forbids purposely intending to violate the law. Such intent may be determined from all of the facts and circumstances surrounding the case about which you all are the sole judges and act or failure to act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reasons.

The instruction requested could have added nothing proper or needful to that set out above and, in light of its delivery, would have been surplusage. Its refusal was not error.

■ Milstead next complains of the granting of the United States' motion in limine forbidding reference to an immunity agreement between Lota and the United States entered in connection with Lota's testimony before a grand jury investigating the assassination of Judge John H. Wood.

We see little relevance in such matter, given that Lota's two plea agreements in connection with Milstead's case were before the jury and were the subject of extensive examination and cross-examination. With such ammunition available to and used by the defense, we conclude that the trial judge was well within the proper limits of his discretion in concluding, as he did, that any probative value of such an agreement in an unrelated and sensational case was outweighed by the danger of unfair prejudice to the United States. Rule 403, Federal Rules of Evidence.

■ Error is next assigned to the failure to hold a hearing to inquire into the failure of the United States to produce, in response to a defense request for such matter, the sworn statement of another woman, taken by Lota's bank, describing her similar business and personal liason with Lota carried on during the same period as Milstead's. For several reasons, we are unable to perceive error here. In the first place, the matter is very doubtfully cast as *Brady* material at all; how the fact that Lota had engaged in conduct with other customers similar to his with Milstead tends to exculpate Milstead is unclear to us. In the second, Milstead's counsel was advised by the United States that the bank might have taken such statements, but failed to follow up that information. Since the statement was as available to the defense as to the prosecution, the consequences of this lack of diligence fall upon Milstead. *United States v. Johnson*, 596 F.2d 147 (5th Cir. 1979) (per curiam opinion). Finally, it appears that substantially the same information was furnished the defense in the form of Lota's testimony before the grand jury.

■ Next, relying on *United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980), Milstead advances as error a reference by the prosecution to Milstead's retaining counsel after the bank became aware of her loan scam. Certainly this is error, strongly to be condemned. As we held in *McDonald*, such a tactic—seeking to imply guilt in a defendant by commenting on his exercise of the right to counsel—may be noticed by us even though not objected to and, in the circumstances there presented, could not be viewed as harmless. Here, however, there was only a passing reference in questioning with no follow-up in argument, a reference immediately and forcefully condemned by the trial judge in a vigorous and substantially correct instruction. Reprehensible as such questions are, and severely to be condemned, we do not believe that this lone instance, immediately reproved, injected error incurable by instruction into the proceeding.

■ Finally, Milstead argues that eight of the ten indictments against her are fundamentally defective as charging, pursuant to 18 United States Code, Section 1014, the making of "false statements or reports" for the purpose of influencing the federally-insured bank her forgery of the names of others to loan papers. These acts, she claims, should have been charged as forgeries, not as the making of false statements. We disagree. Integral to the scheme in this case was evading Lota's loan limits by presenting documents misrepresenting loans to Milstead as loans to others. While doubtless forgeries, the loan papers made out to spurious third parties were false statements as well, designed to influence action of the bank.

As we find no reversible error, we affirm Milstead's convictions and the judgment below.

AFFIRMED.