UNITED STATES of America, Appellee,

v.

Suzan Joseph DAOUD, Defendant,
Appellant.

No. 84–1090.

United States Court of Appeals,
First Circuit.

Argued June 8, 1984.

Decided Aug. 27, 1984.

Jose R. Aguayo, Hato Rey, P.R., by appointment of the Court, for defendant, appellant.

Charles Fitzwilliam, Asst. U.S. Atty., Hato Rey, P.R., with whom Daniel Lopez Romo, U.S. Atty., Hato Rey, P.R., and Antonio R. Bazan, Asst. U.S. Atty., were on brief, for appellee.

Before CAMPBELL, Chief Judge, STEWART,* Associate Justice (Retired), and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from defendant's conviction of unlawfully importing and possessing with intent to distribute heroin in violation of 21 U.S.C. §§ 952(a) and 841(a)(1).

Defendant Suzan Daoud, a citizen of Lebanon, arrived at San Juan International Airport at 5:30 a.m. on October 4, 1983. Defendant claimed her suitcase and went to the customs inspection area, where Customs Inspector Sonia Maldonado conducted the primary interview of defendant. Maldonado testified that her suspicion was aroused by defendant's behavior: defendant changed lines while awaiting inspection, as if in a hurry to pass customs, and avoided eye contact with Maldonado. Upon reviewing Daoud's passport, Maldonado noticed that defendant had travelled to the United States in August 1983. Her suspicion was heightened when Daoud stated that she worked as a secretary in Lebanon, because the expense of two trips to the United States within two months (approximately $2,500 airfare for each trip) seemed beyond a secretary's means.

Daoud was sent for secondary inspection by Inspector Roman Hernandez. Hernandez testified that he asked defendant to open her suitcase but had to assist her because her hands were shaking. His examination of the suitcase revealed what seemed to be a false bottom. A hole drilled in the suitcase produced a white powder which was determined to be heroin. At this point defendant was arrested and given the *Miranda* warnings.

A drug enforcement agent, Felix Jimenez, was summoned to the airport. He testified that he read defendant the *Miranda* warnings and then began questioning her. Defendant responded that while shopping for a suitcase in Lebanon she had been approached by an acquaintance who offered to give her a suitcase for her trip. He delivered the suitcase to her home the next day, and she used the suitcase for her trip to Puerto Rico. She was asked about her occupation; and upon responding that she was a secretary, she was asked her salary. At this point defendant requested the best attorney in Puerto Rico and refused to answer further questions.

Defendant was indicted on October 5, 1983 for knowingly, intentionally and unlawfully importing and possessing with intent to distribute heroin. On December 12 and 13, 1983, defendant was tried and convicted on both counts of the indictment. During the trial two prosecution witnesses made reference to defendant's request for the best attorney in Puerto Rico. Defense counsel objected and requested either a corrective instruction or a mistrial. Both objections were overruled and no corrective instruction was given. Defendant testified on her own behalf. She stated that she had not known of the presence of heroin in the suitcase, and that it was her family that had supplied money to permit her to travel. On cross-examination she responded "no" to the prosecutor's question whether she was paying for her own counsel. Defense counsel objected and requested a mistrial; the court sustained the objection, struck the offending testimony, and gave a curative instruction, but refused to order a mistrial.

Defendant appeals from her conviction, arguing that the comments on her request for counsel and the questioning about her court-appointed counsel violated her constitutional rights and require reversal of her conviction.

* Of the Supreme Court of the United States, sitting by designation.

## I.

The Supreme Court has held that a defendant's post-arrest silence cannot be used to impeach the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Court reasoned,

> The warnings mandated by [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] as a prophylactic means of safeguarding Fifth Amendment rights ... require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights .... Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.*, 426 U.S., at 617–18, 96 S.Ct. at 2245 (footnotes omitted).

▮ Lower federal courts have extended the Supreme Court's reasoning in *Doyle* to an arrestee's request to secure counsel. The right to counsel is included in the *Miranda* warnings, and as such is covered by the implicit assurance that invocation of the right will carry no penalty. *United States v. McDonald*, 620 F.2d 559, 562–63 (5th Cir.1980). *See United States v. Liddy*, 509 F.2d 428, 444–45 (D.C.Cir.1974); *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616 (3d Cir.1973); *Fagundes v. United States*, 340 F.2d 673 (1st Cir.1965).

When the prosecution reveals at trial that a defendant asked for a lawyer after his arrest, courts have looked at all the circumstances under which the disclosure was made in order to determine how seriously in the eyes of the jury it may have penalized defendant's exercise of his right to counsel. Incidental references have not led to reversal. In *Jacks v. Duckworth*, 651 F.2d 480, 482 (7th Cir.1981), the Seventh Circuit held that it was not reversible error for a trial court to admit into evidence a tape-recorded conversation ending with the statement by the defendant, "As regards what happened this evening, I want to talk to my attorney." The court reasoned that,

> Certainly the reading of this one sentence to the jurors after they had been read the considerable forepart of the petitioner's conversation with [the police officer] would be lost in all the rest of the evidence rather than cause them to convict. The trial judge left it in merely to mark the termination of the permissible evidence .... While it might have been better practice to suppress the sentence, certainly it was not so prejudicial a ruling as to constitute reversible error in view of the strong case against petitioner.

*Id.* at 483.

In *United States v. Milstead*, 671 F.2d 950 (5th Cir.1982), the court reviewed a prosecutor's reference to the defendant's retention of counsel. The court strongly condemned the reference, but held that,

> Here, however, there was only a passing reference in questioning with no follow-up in argument, a reference immediately and forcefully condemned by the trial judge in a vigorous and substantially correct instruction. Reprehensible as such questions are, and severely to be condemned, we do not believe that this lone instance, immediately reproved, injected error incurable by instruction into the proceedings.

*Id.* at 952.

Reversal has been ordered, however, when the prosecution has deliberately sought to capitalize on a request for counsel, as by arguing the defendant must have had something to hide if he needed a lawyer before talking to the police. *United States v. McDonald*, 620 F.2d at 562–63; *United States ex rel. Macon*, 476 F.2d at

614. *See also Doyle v. Ohio*, 426 U.S. at 614 n. 5, 96 S.Ct. at 2243 n. 5.

■ In the present case the prosecution needlessly brought out the reference to defendant's request but did not argue the matter thereafter. The first mention of defendant's request for counsel came during the government's redirect examination of Inspector Maldonado:

Q Do you recall if she said anything else to you?

A I recall, not exactly in these words, but she didn't know anything about the suitcase, anything of what was inside of the suitcase.

Q That is all she said to you?

A At that time, that is what I remember. And she was crying, kept crying.

. . . . .

Q She was under your custody from 6:05 A.M. until 9:00 A.M.?

A Yes.

Q And that is all you recall she told you?

A During the time the DEA Agent was questioning her, she said she wanted the best lawyer here.

[U.S. ATTORNEY]: I have no further questions.

Defense counsel made no objection at that time, but after briefly cross-examining Inspector Maldonado he requested a curative instruction or a mistrial.

The second mention was during the government's direct examination of Agent Jimenez:

Q Did she tell you anything else?

A . . .

Subsequent to that, I asked the Defendant what she was doing for a living. And she stated that she was a Secretary with the Water Company in Lebanon.

Subsequent to that, I asked her how much money she made from her job. And at that time she refused to answer the question and asked to talk with the best attorney in Puerto Rico, that she wanted representation of the best attorney here in Puerto Rico.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

THE WITNESS: At that time, the debriefing was terminated.

After the direct examination of Agent Jimenez, defense counsel cross-examined Jimenez on defendant's constitutional right to counsel and Jimenez admitted that a request for counsel was not unusual.[1]

Defense counsel's requests for a mistrial or a corrective instruction after the exchange with Inspector Maldonado were denied by the court:

I will deny the motion. Let the jury make whatever inference, she said it right there, after she was given the warnings. If she said I am guilty that would be an admission itself.

We hold that the district court erred in refusing to grant a curative instruction at this juncture. Defendant had a constitutional right not to be penalized for invoking her right to counsel, and it is at least possible that some jurors would have misconstrued her request as tending to admit guilt. Accordingly, to avoid any such misunderstanding, the court should have granted defense counsel's request for a

---

**1.** The full exchange on cross-examination follows:

Q She asked for an attorney?

A She asked for the best attorney in Puerto Rico.

Q That is her Constitutional right; is that correct?

A Yes.

Q Nothing negative can be taken of that request?

A I immediately stopped questioning her.

Q That is her legal right if she doesn't want to answer, you can't take anything negative about that?

A That is on the *Miranda* warnings, I read it and she decided to answer questions.

Q So, there is nothing strange or nothing bad about asking for a lawyer?

A It is normal in our job.

Q Not only that, it is normal for somebody to say I would like an attorney?

A Yes. After advising her of Constitutional rights, that she had the right to ask for an attorney.

Q Nothing negative should be taken of that?

A No, sir.

suitable instruction bringing home to the jury that it was to draw no adverse inference from the mere fact that defendant had requested counsel. To be sure, defendant allegedly asked not just for counsel but for "the best attorney in Puerto Rico." Arguably her request for the *best* attorney went beyond a constitutionally protected request and hence was fair game to be brought out. But given the constitutional principle that a defendant may not be penalized for exercising his right to counsel, we do not think the court could properly allow the jury to draw adverse inferences from her request for the "best" where it could not draw adverse inferences from a more simply worded request.

Fortunately for the government, the prosecutor never made a point of asking the jury to draw a negative inference from the defendant's exercise of a constitutional right. To the contrary, Agent Jimenez conceded her right to seek counsel, and that "nothing negative should be taken."[2] The matter was not pursued in argument; both references to Daoud's request for counsel came in answers to general questions. Indeed, the first response was not immediately objected to. The second reference, however, elicited a prompt objection, and at this point the court should have granted a curative instruction as requested by defense counsel.

While the court's refusal to give a curative instruction was error, our review of the record convinces us "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This conclusion is supported by the very strong case against defendant, the implausibility of her defense, the slight magnitude of the error, the absence of prosecutorial comment on Daoud's request for counsel, and defense counsel's effective cross-examination of Agent Jimenez. We therefore hold that although the district court should upon request have instructed the jury not to draw any inference from defendant's

assertion of her constitutional right to counsel, such error was harmless under the *Chapman* standard.

## II.

▮ Defendant also seeks reversal because of the district court's refusal to grant a mistrial after the prosecutor asked defendant if she was paying for her own counsel. We do not believe that this was an improper question given defendant's story that her parents paid for her two trips from Lebanon to Puerto Rico. Defendant's indigency cast doubt on this explanation. The question of who paid for her lawyer did not amount to an attempt to penalize her exercise of the right to counsel. Even supposing, moreover, that it was error to comment on defendant's reliance on court-appointed counsel as a means of impeaching her testimony about her family's wealth, the district court removed any possible prejudice by striking the challenged exchange and promptly admonishing the jurors to disregard defendant's choice of counsel in their deliberations.

*Affirmed.*