Jackie Russell KEETER, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–169–CR.

Court of Appeals of Texas, Waco.

April 3, 2003.

Sandy S. Gately, Gatesville, for Appellant/Relator.

B.J. Shepherd, Hamilton County District Attorney, Martin L. Peterson, Hamilton County Asst. District Attorney, Meridian, for Appellee/Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

BILL VANCE, Justice.

On January 8, 2003, we issued an opinion reversing Keeter's conviction and remanding the cause for further proceedings, because the State did not disclose material exculpatory evidence at Keeter's trial. Now, to further address the State's argument, and the dissent's, that this issue was not preserved for appellate review, we withdraw our earlier opinion and issue this one.

### Background

A jury convicted Jackie Russell Keeter of indecency with a child—his stepdaughter J.K. After trial, J.K. recanted. Keeter filed a motion for new trial which was denied after a hearing. We reversed the conviction after we found that the trial court abused its discretion in disbelieving the recantation and in denying the motion. *Keeter v. State*, 43 S.W.3d 667 (Tex.App.-Waco 2001). But the Court of Criminal Appeals did not find an abuse of discretion, reversed our judgment, and remanded the case for further proceedings. *Keeter v. State*, 74 S.W.3d 31 (Tex.Crim.App.2002).

In his original appeal, Keeter raised a second issue which we did not resolve because of our finding about the recantation. He claimed the State withheld important exculpatory evidence which he could have used at trial to impeach J.K.'s credibility. We will now address the issue.

### Standard of Review

Before trial, defense counsel requested that the court issue its standard pretrial discovery order; the request was granted. Number four of the order states: "Any other evidence or information which: (1) is favorable to the Defendant and creates a probability of his innocence sufficient to undermine confidence in a contrary finding, or (2) that tends to negate the guilt of Defendant or mitigates the offense." *Cf.* Tex.Code Crim. Proc. Ann. art. 2.01 (Vernon Supp.2003) (The State "shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.").

Keeter does not complain on appeal about a violation of the court's order; rather he complains of a violation of *Brady v. Maryland*, which requires that a prosecutor disclose to defense counsel material information which is exculpatory. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *McFarland v. State*, 928 S.W.2d 482, 511 (Tex.Crim.App.1996), *overruled on other grounds*, 983 S.W.2d 249, 263 (Tex.Crim.App.1998). Information is "material" when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim.App.1999); *Nickerson v. State*, 69 S.W.3d 661, 676 (Tex.App.-Waco 2002, pet.

ref'd) (citing *Little* ).[1] A *Brady* violation is one of due process, and a three-part test is used to evaluate whether a violation has occurred: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; (3) the evidence is material, *i.e.,* there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Ex parte Richardson,* 70 S.W.3d 865, 871 (Tex.Crim. App.2002); *Little,* 991 S.W.2d at 866. The question is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); *see Cook v. State,* 940 S.W.2d 623, 627 (Tex.Crim.App. 1997) (confidence in the "outcome"). And as mentioned, the State's good or bad faith in withholding favorable evidence is irrelevant. *Cook,* 940 S.W.2d at 627; *see United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400–01, 49 L.Ed.2d 342 (1976). Finally, if the appeals court finds a *Brady* violation, the remedy is a reversal. *See Ex parte Richardson,* 70 S.W.3d at 870; *Nickerson,* 69 S.W.3d at 676. We understand that to be so because a *Brady* analysis includes a "harm" analysis; *i.e.,* for there to be a *Brady* violation, harm must have occurred.

### Preservation of Complaint

■ The State questions whether the complaint was preserved. Courts have reviewed *Brady* claims preserved by a timely complaint making the trial court aware of the violation. TEX.R.APP. P. 33.1(a); *e.g.,*

*McFarland,* 928 S.W.2d at 511 (by pretrial discovery motion); *Nickerson,* 69 S.W.3d at 672 (by motion for mistrial during punishment phase). Keeter filed a First Amended Motion for New Trial in which he stated, in part: "The verdict in this cause is contrary to the law and the evidence. ... Evidence establishing the defendant's innocence was withheld by a material prosecution witness." Attached to the motion was an affidavit from J.K.'s stepmother, Rhonda, whom the State called at trial as its "outcry" witness. It read in part: "[J.K.] has change her story to [sic] many times while talking to me about [Keeter]. I told [the prosecutor] that I did not believe that [Keeter] had not [sic] done what [J.K.] said. [The prosecutor] said that he would not put me on the stand due to my beliefs."

We disagree with the State and find that the motion with the affidavit is sufficient to preserve the complaint. Accordingly, we will review Keeter's *Brady* claim.

### Brady Claims and Marin

The State also insists, however, that Keeter's motion was not specific enough to preserve the complaint, and that the affidavit should be given no weight in that determination. Thus, a question is also presented whether, under the rules in *Marin v. State,* a *Brady* claim must be preserved. *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993).

The *Marin* Court held that a defendant's rights arise from distinct rules that generally fall into one of three categories: (1) absolute requirements and prohibitions; (2) rights which must be implemented by the system unless expressly waived; and (3) rights which are implemented only upon request. *Id.* at 279. Absolute re-

---

1. *Brady* includes both exculpatory and impeachment evidence. *Nickerson,* 69 S.W.3d at 672.

quirements and prohibitions, as well as rights which must be implemented unless waived, cannot be made subject to procedural default on appeal because, by definition, they are not forfeitable. *Id.* Determining which category a right falls into will usually settle the question of whether a procedural default occurred, and therefore whether the issue was preserved for appeal. *Id.*

Absolute rights cannot be waived or forfeited, even with consent. *Id.* at 280. Implementation of these rights is not optional and cannot be waived or forfeited. *Id.* at 279. A defendant may complain about the violation of an absolute right or prohibition on appeal without having raised the question in the trial court. *Id.* at 280. These rights pertain to systemic requirements of the judicial proceeding. *Id.* at 279.

An example of a right in the first category is jurisdiction. *Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App. 1995). Lack of jurisdiction over a case renders the judgment void. *Ex parte Seidel,* 39 S.W.3d 221, 224 (Tex.Crim.App. 2001) (citing *Hoang v. State,* 872 S.W.2d 694, 698 (Tex.Crim.App.1993)). Also, a defect which renders a sentence void may be raised for the first time on appeal. *Heath v. State,* 817 S.W.2d 335, 336 (Tex.Crim. App.1991). Another example is a challenge to the constitutionality of a statute. *Reyes v. State,* 753 S.W.2d 382, 383 (Tex.Crim. App.1988) ("unconstitutional statute is void from its inception and cannot provide a basis for any right or relief"); *Rabb v. State,* 730 S.W.2d 751, 752 (Tex.Crim.App. 1987); *Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Crim.App. [Panel Op.] 1980); *Bryant v. State,* 47 S.W.3d 80, 84 (Tex.App.-Waco 2001, pet. ref'd) (facial constitutionality of a statute). Furthermore, a violation of the *ex post facto* clause can be raised for the first time on appeal. *Ieppert v. State,* 908

S.W.2d 217, 220 (Tex.Crim.App.1995). Finally, in *Blue,* the Court held that remarks the judge made to the jury panel which "imparted information to the venire that tainted the presumption of innocence" was "fundamental error of constitutional dimension and required no objection" from defense counsel to preserve it for appellate review. *Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App.2000).

Rights in the second category—waivable rights—are "so fundamental to the proper functioning of our adjudicatory process" that they do not vanish easily. *Marin,* 851 S.W.2d at 278. A litigant does not give them up unless he does so plainly, freely, and intelligently. *Id.* at 280. If a defendant wants to relinquish one of these rights, he must expressly do so, *i.e.,* there must be an "intentional relinquishment or abandonment of a known right or privilege." *Id.* at 279 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Sometimes the waiver must be in writing; always, it must be on the record. *Id.* at 280. The judge has an independent duty to implement such rights, absent an effective waiver. *Id.* Some, but not all, constitutional rights fall into this category. *Id.* at 279. Examples of category-two rights are the right to counsel and the right to a jury trial. *Ieppert,* 908 S.W.2d at 219. Also, a complaint of ineffective assistance of counsel cannot be procedurally barred under Tex.R.App. P. 33.1. *Robinson v. State,* 16 S.W.3d 808 (Tex.Crim.App.2000).

The third category includes rights that arise from rules that are optional with a defendant. *Marin,* 851 S.W.2d at 278. Rule of Appellate Procedure 33.1 applies only to these rights; the judge must implement them only on request of a party, and they will be forfeited if no complaint is made at trial. *Id.* at 280; Tex.R.App. P.

33.1. The judge has no independent duty to enforce these rights. *Marin,* 851 S.W.2d at 278. "Forfeiture" and "procedural default" are synonymous. *Id.* at 279. Ordinary objections to evidence and procedural benefits are included in this category. *Id.* at 278. Some constitutional rights fall into this category. *Ieppert,* 908 S.W.2d at 221 (Baird, J., concurring). Rule 33.1 reaffirms these basic principles of adversarial litigation; it was not meant to amend or repeal them. *Marin,* 851 S.W.2d at 280. Because Rule 33.1 may not "abridge, enlarge, or modify" a defendant's substantive rights including the statutory right to appeal, it does not apply to errors concerning the first two categories of rights. *Id.* at 278, 280; Tex. Gov't Code Ann. § 22.108 (Vernon Supp.2003).

■ The State would have us place *Brady* claims in category three. The Court of Criminal Appeals has not decided the matter. But in a recent case, the United States Supreme Court implied that *Brady* claims are in category one. *United States v. Ruiz,* 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). In *Ruiz,* the defendant refused to sign a plea-bargain agreement in which she was required to waive the receipt of certain *Brady* material. *U.S. v. Ruiz,* 241 F.3d 1157, 1161 (9th Cir.2001). The Ninth Circuit held that, while some constitutional rights are waived by entering a guilty plea (*e.g.,* rights to jury trial, to confront one's accusers, and against self-incrimination), and some constitutional rights may be expressly waived in plea-bargain agreements (*e.g.,* right to appeal), other constitutional rights cannot be waived, including the right to *Brady* material (and breach of plea agreement, illegal sentence, unanimous jury verdict). *Id.* at 1163–64. In *Marin* terms, the Ninth Circuit placed all *Brady* claims in category one. The Supreme Court, however, ruled that, in a plea-bargain

agreement such as Ruiz's, a defendant may waive the right to *Brady* impeachment evidence relating to the witnesses against him. *Ruiz,* 122 S.Ct. at 2454, 2457. The Court distinguished "fairness of trial" issues from "voluntariness of plea" issues. *Id.,* 122 S.Ct. at 2455. Thus, in *Marin* terms, the Court placed *Brady* claims which arise in plea-bargain cases in category two. But significantly, because the Court did not also say that a defendant may waive his right to *Brady* material when there is a trial, by implication that is a non-waivable due process right, *i.e.,* a *Marin* category-one right.

Placing *Brady* claims in category one when there is a trial also follows logic and common sense. First, if placed in category two, under what circumstances would a defendant going to trial ever intentionally waive disclosure of material exculpatory information? Also, if placed in category three, then because it is common for a defendant to learn of the *Brady* material only after trial, in that event he would be required to object to a violation of which he was unaware until after the verdict was returned. Furthermore, the Supreme Court has held that the prosecutor's duty to disclose *Brady* material exists without a request from the defendant. *Agurs,* 427 U.S. at 107, 96 S.Ct. at 2399. It makes little sense to require the defendant to preserve by objection the non-disclosure of material to which he is entitled without making a request and which the prosecution has an affirmative duty under the Constitution to turn over. Therefore, to avoid these illogical results, *Brady* issues should be included in category one.

Category-one rights are those fundamental rights involving systemic requirements of a trial. *Marin,* 851 S.W.2d at 279. It seems fundamental that a trial should be conducted and a verdict rendered under circumstances in which soci-

ety may have confidence that the defendant received a fair trial and that justice was done. Otherwise, the "system" fails. And for the prosecution to fail to disclose to the defendant material exculpatory information compromises this confidence by "tainting" the fairness of the trial, and that failure should be "fundamental error of constitutional dimension and require[s] no objection" from defense counsel to preserve it for appellate review. *See Blue*, 41 S.W.3d at 132.

Supporting the conclusion that this disclosure by the prosecutor rises to the level of a fundamental systemic requirement of a fair trial is the fact that the disclosure is required by both statute and the rules of ethics:

> Duties of District Attorneys ... It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.

TEX.CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp.2003).

> Rule 3.09. Special Responsibilities of a Prosecutor
>
> The prosecutor in a criminal case shall:
> ...
> (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; ...

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.09(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. 10, § 9).

In addition, that a prosecutor's conduct must rise to a high level to ensure fairness in the system has been eloquently expressed by the Supreme Court:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

*Brady* claims should fall under *Marin's* category one and need not be "preserved" for appellate review.

### Analysis

■■■ We will review this complaint in the manner required by the Court of Criminal Appeals in *Ex parte Richardson*. Keeter must show: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence was favorable to Keeter; and (3) the withheld evidence was material, *i.e.*, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Ex parte Richardson*, 70 S.W.3d at 871.

*Did the State Fail to Disclose Favorable Evidence?*

At the hearing on the motion for new trial, Keeter's attorney testified that, after trial, she learned from J.K.'s father and step-mother—with whom J.K. lived the two years before trial—that they did not believe J.K. was telling the truth about Keeter's molesting her, and they had told the prosecutor that. J.K.'s father, Travis, testified he did not believe J.K. told the truth about Keeter. He said: "[A]ll she has told me through the year was a lie. She has not told me one thing truthful." Travis also testified he told the prosecutor before trial he did not believe J.K. However, he admitted on cross-examination that prior to that, he had told the prosecutor he believed J.K. Rhonda also testified at the hearing that she never believed J.K. from the beginning and told the prosecutor before trial she did not believe J.K. Rhonda said "[J.K.] kept changing her story one too many times" about whether Keeter molested her. "She will say he did it, then if we asked—talked about it, she'll say he didn't do it or I never said that. She just wasn't consistent with her story. . . . I was not going to tolerate her lying, being dishonest, being disrespectful to other people. . . . I told [Travis] he either gets her under control to where she minds and listens, not throw fits, and hits me, be mean to me or she can go back home to her mother." When asked "Was your experience with [J.K.] that she lies?", Rhonda responded: "She lies a lot." We conclude that the State withheld from defense counsel the fact that Travis and Rhonda had said they did not believe J.K., and that she had made contradictory statements about Keeter; this evidence was favorable to Keeter's defense because it could have been used to impeach J.K.'s credibility. *Id.*

*Was the Withheld Evidence "Material"?*

Keeter argues that if the prosecutor had made defense counsel aware before trial that Travis and Rhonda had said they did not believe J.K., defense counsel would have followed up with them, learned of the above testimony, and had them testify at trial to discredit J.K.'s testimony. Our original opinion stated:

Because we sustain the recantation issue, we need not decide Keeter's issue under *Brady v. Maryland*, that the prosecutor failed to inform defense counsel about what Travis and Rhonda told him regarding whether J.K. was telling the truth. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (*Brady* extends to evidence which impeaches the credibility of a witness). However, we note that if the defense lawyer had known that Travis and Rhonda had potential impeachment evidence, and had interviewed them and learned their opinions of J.K.'s untruthfulness, both could have been called to testify at the original trial to impeach J.K.'s character for truthfulness. Tex.R. Evid. 608(a)(1). Rhonda could have testified that J.K. vacillated on whether the abuse even occurred. Both Travis and Rhonda could have testified regarding their opinion that J.K. was not a truthful person. When an entire case revolves around the credibility of a single witness, and the defendant can testify only at the peril of the jury being informed of his two prior felony convictions, one of which is for the same type of offense, no evidence is more important to the defense than testimony which impeaches the credibility of that single witness. *Keeter*, 43 S.W.3d at 676–77.

We still hold to that position. J.K.'s testimony was essential to the State.

Keeter did not testify to rebut her testimony, presumably because he had two prior felony convictions—one for the same type of offense, which he could not afford for the jury to learn about.[2] Therefore, his primary defense was to discredit J.K.'s testimony. To do that, at trial the defense relied on J.K.'s mother (Eva), the live-in babysitter (Vennie), and Keeter's father (Jack).

Eva testified about the date of the alleged incident which J.K. said occurred in the morning. Eva said that on that date, J.K. had a half-day of school in the morning, and in the afternoon she went to a party at a playmate's house. Keeter was home that day, sick in bed. Eva also said there were two bedrooms in the house, one occupied by Eva and Keeter and the other by Jack. Vennie and the four children slept in the living room. When Eva was not at home, Vennie kept the children. Eva testified Keeter usually worked from 6 a.m. to sometimes 6 to 8 p.m. He had been working these hours for about a year. She said J.K. and Keeter got along well, and J.K. was not afraid of Keeter. Also, Eva and J.K. got along well, and J.K. never mentioned to Eva any problems concerning Keeter.

Vennie testified that she was at the house with the children practically twenty-four hours a day, seven days a week. She confirmed that J.K. was in school the morning of the alleged incident, and Keeter was at home sick. Vennie said Keeter

usually worked until 7 or 8 p.m. He never kept the children, even on weekends; she did. Only she and Eva disciplined the children. She testified that J.K. had a good relationship with Keeter and was not afraid of him. Vennie believed J.K. would have told her about any problem with Keeter.

Jack also confirmed that J.K. went to school the morning of the alleged incident. J.K. got out at noon and went to a party at a friend's. Keeter was at home, sick; Jack was off work and was also at home. He stated that J.K. confided her problems in him, was not afraid of Keeter, and was never disciplined by Keeter. He confirmed that Keeter worked 6 a.m. to 6 p.m., five to six days per week.

While the testimony of these three witnesses was useful, the contradictions they raised about J.K.'s testimony were explained by the argument that J.K. just got her days mixed up. As the State argued in closing: "As far as when this actually happened is not the point. The point is it's happened.... [T]he fact that these other people say, well, I was there on the 20th and she was at school, this just didn't happen this way. That's not what's important in this case." Travis's and Rhonda's testimony had, by far, the highest potential to discredit J.K. But the prosecutor did not disclose to defense counsel that Travis and Rhonda had told him of their doubts about the truth of J.K.'s accusations. The

2. At the punishment hearing, the State called one witness, Keeter's sister, who testified that when she was between the ages of seven and twelve, and Keeter was between the ages of eleven and sixteen, he molested her on several occasions, although they never had sexual intercourse. She did not tell anyone until thirteen years later, when she told her husband after learning Keeter had been indicted on the offenses involving J.K.

The State also introduced documentary evidence of the following: (1) In 1987, when he

was seventeen, Keeter was accused of exposing his genitals in the presence of a female under the age of seventeen. He was convicted of indecency with a child in 1988, and placed on probation. That was revoked in 1989 because he allegedly had sexual intercourse with another female under the age of seventeen. He was sentenced to two years' imprisonment; (2) In July of 1998, Keeter was convicted in federal court of being a felon in possession of a firearm. He was sentenced to thirty months' imprisonment.

question is whether there is a "reasonable probability" that disclosure of the evidence would have altered the outcome of the trial. *Ex parte Richardson*, 70 S.W.3d at 871. That is, was Keeter afforded a trial resulting in a verdict worthy of confidence. *Cook*, 940 S.W.2d at 627.

The Court of Criminal Appeals recently discussed *Brady* violations in *Ex parte Richardson*. Richardson was convicted of capital murder, and he eventually filed an application for a writ of habeas corpus. *Ex parte Richardson*, 70 S.W.3d at 866. One of his complaints was that the State committed a *Brady* violation by not disclosing a diary kept by an officer who helped guard—at secret locations for about a year before trial—the State's sole eyewitness to the murders. *Id.* at 871. The officer kept the diary to protect herself from false accusations by the eyewitness whom the officer said was untruthful. *Id.* The diary identified other officers who made statements included in the diary and who later testified they also found the eyewitness untruthful. *Id.* at 872. In granting habeas corpus relief, the Court concluded that the testimony of the several officers about the eyewitness's truthfulness was "extremely powerful impeachment evidence," was "critical to the State's case," and "would, in all likelihood, create the probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 872–73.

Similarly, the State's case against Keeter rested on the testimony of a single eyewitness, J.K. The prosecutor had knowledge of two witnesses close to J.K. who told the prosecutor J.K. was not truthful. The witnesses had testimony that would have provided powerful evidence calling J.K.'s credibility into question. Their testimony was admissible to provide non-hearsay evidence of prior inconsistent statements as well as character

evidence to impeach credibility. Tex.R. Evid. 608, 613(a); *see Ex parte Richardson*, 70 S.W.3d at 873 (The exculpatory nature of other evidence, *i.e.*, the names of the other officers, which is revealed through the primary undisclosed exculpatory evidence (the diary) is to be considered when conducting the *Brady* analysis.). Failure of the prosecutor to disclose, coupled with the nature of the withheld information, undermines confidence in the verdict. *Id.*

We conclude that the testimony of Travis and Rhonda was "material," *i.e.*, there was "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Little*, 991 S.W.2d at 866.

### Is There a "Blanket Exception to Disclosure" Rule?

But the State argues an exception. It says the prosecutor does not have to disclose exculpatory evidence otherwise available to the defense which the defense could discover through reasonable diligence. The State is correct that under a variety of circumstances, courts have held that the duty fell to the defendant to discover the complained-of evidence. For example:

- evidence of which the defense is already aware, *Ex parte Russell*, 738 S.W.2d 644, 646 (Tex.Crim.App.1986); *Means v. State*, 429 S.W.2d 490, 496 (Tex.Crim.App.1968);
- documents the defendant failed to obtain when he failed to have executed a subpoena duces tecum he had caused to be issued, *Jackson v. State*, 552 S.W.2d 798, 804 (Tex.Crim.App.1976);
- evidence of the existence of a witness known to exist by the state but whose identity and whereabouts were unknown to the state, *Brown v. State*, 513 S.W.2d 35, 36 (Tex.Crim.App. 1974);

- public records which defense counsel should have known about and failed to obtain because of lack of diligence in his investigation, *Dalbosco v. State*, 978 S.W.2d 236, 238 (Tex.App.-Texarkana 1998, pet. ref'd);
- evidence that a witness identified the defendant as being at a place away from the murder when it occurred, in that the defendant supposedly knew where he was at the time of the murder, yet failed to investigate and find the witness, *Rector v. Johnson*, 120 F.3d 551, 558–60 (5th Cir.1997);
- a full written statement of a witness, never examined by the defense, which was referenced in a summary of the statement given to the defense, *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir.1994);
- a video-tape of an interview with the alleged victim by his attorney, which the defense knew existed but which it failed to pursue by a court order to procure the tape from the attorney, who had claimed attorney-client privilege, *United States v. McKenzie*, 768 F.2d 602, 607–08 (5th Cir.1985); and
- a copy of sworn statement of a witness taken by a bank which the prosecution had, which the defense knew existed but failed to attempt to obtain from the bank, *United States v. Milstead*, 671 F.2d 950, 953 (5th Cir.1982).

■ However, none of these cases supports a "blanket exception" rule (as other cases not cited may suggest) that defense counsel has a duty to "speculate" about what exculpatory evidence a witness or a potential witness *might* know of and to investigate that possible evidence. The cases do not hold that the prosecution is relieved of its duty under *Brady* to disclose exculpatory evidence when defense counsel (a) knows or should know a witness exists, and (b) *might* discover the exculpatory evidence *if* defense counsel asks the right questions of the witness. Implementation of such a rule could effectively undermine *Brady* because it would almost always relieve the prosecutor of disclosing *Brady* information. Rather, these cases apply the general rule that defense counsel has a duty to exercise reasonable diligence to investigate the case and discover what evidence exists that might aid the defense. What constitutes "reasonable diligence" depends on the individual circumstances, as shown by the cases listed above.

A case from the San Antonio court demonstrates the proper application of the rule. In *Flores v. State*, an eyewitness gave a written statement which was in the prosecutor's file. *Flores v. State*, 940 S.W.2d 189, 190 (Tex.App.-San Antonio 1996, no pet.). Defense counsel had access to the file. *Id.* The day before trial, the witness made oral statements to the prosecutor which added to her written statement, and the new evidence was favorable to the defense. *Id.* Even though the state did not call the witness at trial (presumably because of contradictions between the oral and written statements), the court held that the prosecutor erred in not disclosing the oral statements to defense counsel. *Id.* The court said that, regardless of whether defense counsel read the witness's written statement, knew of her existence, and could have located and interviewed her, the prosecutor was not relieved from disclosing the oral statements under a theory that the statements would have been discovered by the defense if it had used "reasonable diligence" in its investigation. *Id.* at 191. "[W]e cannot agree that the information [the witness] communicated to the prosecution on the day before trial was equally or fully available to the defense in this case in the sense envisioned by the court of criminal

appeals." *Id.* We believe that the rule applied in *Flores* should be applied here.

■■■ At trial, Keeter's defense counsel called three witnesses in an attempt to attack J.K.'s credibility. The fact that defense counsel had interviewed the witnesses, learned of their exculpatory testimony, and called them at trial, shows that defense counsel had engaged in "reasonably diligent" efforts to learn of exculpatory evidence. On the other hand, Travis, as the father of the allegedly abused child, and her caretaker at the time of trial, would not reasonably have been thought of by defense counsel to have character-impeaching testimony to offer. And Rhonda, as the "out-cry" witness and a key witness for the State, would not reasonably be considered by defense counsel as someone to approach for exculpatory evidence. The fact that they *might* have had such evidence does not shift the prosecutor's duty of disclosure under *Brady* to defense counsel. *Id.* at 191.

We sustain the issue.[3]

### Conclusion

Travis's and Rhonda's factual statements to the prosecutor were *Brady* material crucial to the defense which the State should have disclosed. Keeter's due process rights were violated. Therefore, we sustain the issue, reverse the conviction, and remand the cause for further proceedings.

We withdraw our opinion and judgment dated January 8, 2003, and substitute this opinion therefor. TEX.R.APP. P. 50. The State's Petition for Discretionary review is dismissed by operation of law. *Id.*

REX D. DAVIS, Chief Justice, concurring on petition for discretionary review.

I agree with Justice Vance that Keeter's motion for new trial and supporting affidavit adequately preserved his *Brady* issue for appellate review. Because the issue was adequately preserved, the discussion regarding whether *Brady* violations must be preserved under *Marin* is unnecessary, and I respectfully decline to join it. That aside, I otherwise concur with the lead opinion.

A defendant preserves an issue for appellate review by making "a timely request, objection or motion" which sufficiently apprises the trial court of the ruling sought. TEX.R.APP. P. 33.1(a)(1)(A). Keeter's motion for new trial and supporting affidavit informed the court that the complainant's stepmother, who provided "outcry" testimony, believes that Keeter did not commit the offense. The State did not disclose this fact to Keeter.

To be timely, the defendant must make his objection or request "at the first opportunity or as soon as the basis of the objection becomes apparent." *Wilson v. State,* 44 S.W.3d 602, 606 (Tex.App.-Fort Worth 2001, pet. ref'd) (citing *Dinkins v. State,* 894 S.W.2d 330, 355 (Tex.Crim.App.1995)); *accord Wilson v. State,* 7 S.W.3d 136, 146 (Tex.Crim.App.1999). Thus, the Court of Criminal Appeals held that the defendant's request for a continuance in *Wilson* to investigate certain *Brady* evidence was untimely because the State disclosed the evidence in question five days before testimony began and the defense did not request a continuance until after both sides had

---

3. As we have noted, a *Brady* violation requires a reversal. A finding of "harm" is included in the analysis. If we were required to separately assess "harm," we could not say

beyond a reasonable doubt that the State's failure to disclose did not contribute to the conviction. TEX.R.APP. P. 44.2(a).

rested their cases in chief. 7 S.W.3d at 146.

Keeter's motion for new trial and supporting affidavit adequately called the *Brady* issue to the trial court's attention. He raised the issue as soon as he became aware of it. Therefore, I concur.

TOM GRAY, Justice, dissenting on petition for discretionary review.

In January, the majority determined that a *Brady* violation occurred which required reversal of this case. I dissented because the issue was *not* preserved for our review. Now that the State has also addressed preservation in its Petition for Discretionary Review, Justice Vance changes course and decides that, although Keeter's *Brady* complaint was preserved, Keeter was not required to do so. Once again, I find myself writing a dissent in this case. *See Keeter v. State*, 43 S.W.3d 667 (Tex.App.-Waco 2001) (Gray, J., dissenting), *rev'd* 74 S.W.3d 31 (Tex.Crim. App.2002); *Keeter v. State*, 97 S.W.3d 709 (Tex.App.-Waco, 2003) (Gray, J., dissenting) (opinion withdrawn).

I still contend the issue is not preserved for our review.

Rule 33.1 provides that as a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

\* \* \*

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tᴇx.R.Aᴘᴘ. P. 33.1. In summary, to be preserved, a complaint must be: made to the trial court; specific; timely; and it must be ruled upon. I contend that none of these four requirements are met in this case.

Keeter's entire motion for new trial is as follows:

Jackie Russell Keeter, Defendant, files this Motion for New Trial and shows:

The verdict in this cause is contrary to the law and the evidence.

Evidence establishing the defendant's innocence was withheld by a material prosecution witness.

Defendant prays that the Court set aside the judgment of conviction entered in this cause and order a new trial on the merits.

(C.R. 2nd Supp.93). This motion does not raise a contention that a *Brady* violation occurred. Keeter contended a *witness* withheld evidence, not the State.

Although Justice Vance now says the complaint cannot be waived, an argument I will address later, he continues, as he did in the withdrawn opinion, to argue that the issue was preserved, citing two cases as examples of when a complaint of a *Brady* violation is preserved. I still disagree with Justice Vance's manner of using these cases in his analysis. Justice Vance cites *McFarland v. State* for the proposition that a *Brady* violation complaint is preserved when urged by a pre-trial discovery motion. *McFarland v. State*, 928 S.W.2d 482 (Tex.Crim.App.1996), *overruled on other grounds*, 983 S.W.2d 249, 263 (Tex.

Crim.App.1998). However, the Court of Criminal Appeals did not decide whether the issue was preserved. It assumed, arguendo, that the defendant preserved the issue and overruled the issue. *Id.* at 511. Justice Vance next cites *Nickerson v. State,* proposing that a *Brady* violation complaint is preserved by a motion for mistrial during the punishment phase of the trial. *Nickerson v. State,* 69 S.W.3d 661 (Tex.App.-Waco 2002, pet. ref'd). *Nickerson* did not decide or discuss preservation and should not be used as an example of when a *Brady* violation complaint is preserved. *Id.* at 672–76.

Now, via a concurring opinion, Chief Justice Davis cites two cases to support his conclusion that a *Brady* violation complaint was preserved. The first is only for the general proposition that a complaint must be made as soon as the basis for the complaint is evident. *See Wilson v. State,* 44 S.W.3d 602 (Tex.App.-Fort Worth 2001, no pet.). With this, I have no quarrel. The second case is specifically a *Brady* case in which preservation of a *Brady* complaint was an issue. *See Wilson v. State,* 7 S.W.3d 136 (Tex.Crim.App.1999). In this *Wilson* case, the Court of Criminal Appeals held that a *Brady* complaint was not preserved by a motion for mistrial and continuance upon which an adverse ruling was obtained because counsel had been aware of the alleged *Brady* evidence for at least five days before the complaint was raised. *Id.* at 146. The issue being considered by the Court of Criminal Appeals was whether what was clearly a *Brady* violation complaint was raised in a timely fashion. The Court held that it was not. Neither of these *Wilson* cases help us determine if, on the facts in this case, a timely *Brady* complaint was actually made to the trial court.

Now, some may contend that Keeter's alleged *Brady* violation claim was stated with sufficient specificity in the motion to make the trial court aware of the complaint, or that the *Brady* violation claim was apparent from the context of the attachments to the motion or from the testimony supplied at the hearing on the motion for new trial. *See* TEX.R.APP. P. 33.1(1)(a).

Rhonda King, the victim's step-mom, declared in her notarized statement that she told the District Attorney, "that I did not believe that Jackie had not done what [J.K.] said." Of course, this double negative turns into a positive statement of belief, but from the tenor of the statement, the second "not" was probably a mistake. If this statement was sufficient to put the trial court on notice that a *Brady* violation complaint was contemplated, then it would also be sufficient to put counsel on notice and, therefore, should have been specified in the motion as a ground for relief. It was not a ground for relief. Although a new trial may be granted on grounds not enumerated in the rules of appellate procedure, an accused is required to allege sufficient grounds in the motion to apprise the trial court and the State as to why he believes himself entitled to a new trial. *See State v. Gonzalez,* 855 S.W.2d 692, 694 (Tex.Crim.App.1993). I contend that neither the motion alone nor when Rhonda's statement is added to the motion was sufficient to raise the issue for the trial court.

Now we turn our attention to the actual hearing. Recall that this hearing was about the recantation by the victim of her trial testimony and, specifically, the credibility of the recantation. *See Keeter v. State,* 74 S.W.3d 31 (Tex.Crim.App.2002). Travis and Rhonda King both *essentially* testified [1] at the motion for new trial hear-

1. Travis also stated that, one month before

trial, he told the District Attorney he *believed*

ing that they told the District Attorney prior to trial that they did not believe J.K.'s accusation against Keeter. Keeter's attorney also testified and stated that the State did not tell her Travis and Rhonda did not believe J.K.'s accusations. There was no argument by either party at the conclusion of the testimony. Did the Kings's testimony or the defense attorney's testimony sufficiently put the court on notice that a *Brady* claim was contemplated?

If Keeter's counsel (1) had not determined that a *Brady* violation occurred when she filed her motion for new trial, and (2) if counsel then discovered during the hearing that a potential *Brady* violation occurred, then counsel should have specifically brought it to the court's attention at the point she discovered the potential *Brady* violation. *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App.1999). Counsel did not, I contend, because she did not contemplate the claim. If counsel did not contemplate the claim, how could the trial court?

If this is not enough, let's look at how the trial court ruled. In a letter[2] to the parties, the trial court stated:

> I have finally had a chance this afternoon to review your submissions of case authority in connection with this motion for new trial. I don't find the new testimony that recants the trial testimony to be credible. To do so would require me to believe that this young child made up her testimony because her (younger!!!) sister told her she would have to make something up about the defendant so she could get to go and spend the summer with her dad, when she did not previously know her dad was coming

and when she had not seen him in two years.

> Accordingly the motion for new trial is denied and IT IS SO ORDERED.

There is absolutely no discussion about a potential *Brady* violation, which leads me to believe it was not raised, argued, or otherwise considered and certainly was never ruled on.

Even if the record before us presents some indication of the possibility of a *Brady* violation, we cannot decide this issue in this direct appeal. As in reviewing a claim for ineffective assistance of counsel, we need a record which is sufficiently developed for us to determine whether there is, in fact, exculpatory evidence to be disclosed. The record regarding the alleged exculpatory evidence was not sufficiently developed because no one raised or argued a *Brady* violation at the motion for new trial hearing.

Unlike most alleged *Brady* violations, there is a fact question here about whether the alleged exculpatory statements were even made to the District Attorney. In a situation, like this case, where there is no tangible evidence, the trial court must first determine if there was, in fact, exculpatory evidence to disclose. This means the trial court must determine, as a factfinder, whether the potentially exculpatory statements were made to the District Attorney. In making the factual determination, the trial court must be able to evaluate the credibility of the witnesses. If the *Brady* complaint was preserved, then the trial court resolved the credibility determination against Keeter's witnesses. We should not disturb that implied factual determination. *See State v. Terrazas*, 4

---

J.K.

**2.** I seriously question whether this is a "ruling" but will save that discussion for a later

date. There is no other order or ruling in the record.

S.W.3d 720, 725 (Tex.Crim.App.1999). The majority has become the factfinder and we have no authority to assume that role.

Further, I strongly disagree with Justice Vance's arguments that a *Brady* claim cannot be waived. A majority of the court has already decided that the complaint was preserved. Thus, it is totally unnecessary to launch into a dissertation about why a *Brady* complaint is a non-waivable "category one" right. *See Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993).

Additionally, Justice Vance incorrectly bases his analysis on the United States Supreme Court case of *U.S. v. Ruiz*, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Justice Vance contends in *Ruiz* the Supreme Court "ruled that, in a plea-bargain agreement such as Ruiz's, a defendant may waive the right to *Brady* impeachment evidence of the witnesses against him." (op. at 7). And thus, his argument goes, because the Supreme Court did not say that a defendant may waive his right to *Brady* material when there is a trial, Justice Vance finds by implication, the right to *Brady* material is a non-waivable due process right. (op. at 8).

Interestingly, "waiver" of the right to *Brady* evidence was not the issue in *Ruiz*. The issue was, as stated in the opening paragraph of that opinion, "whether the Fifth and Sixth Amendments *require* federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose 'impeachment information relating to any informants or other witnesses.' (citation omitted). We hold that the Constitution does not *require* that disclosure." *Ruiz*, 122 S.Ct. at 2453. (emphasis added). There is no question that the State is required to disclose exculpatory evidence to a defendant to avoid an unfair trial. The Supreme Court simply decided in *Ruiz* that the prosecutor is not constitutionally required to disclose the same information prior to entering into a plea bargain agreement with the defendant. *Id.* at 2457.

And have we, as lower courts, not learned that we should not read into Supreme Court opinions what is not there? Was our expansive reading of *Anders v. State*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) not summarily rejected in *Robbins* in which we were told the decision in *Anders* did not require a "straightjacket" application by the states of the procedures enunciated in that opinion for the disposition of frivolous criminal appeals? *Smith v. Robbins*, 528 U.S. 259, 274–76, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Was our expansive reading of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) not summarily rejected in *Martinez* in which we were told the opinion in *Faretta* did not hold there was a constitutional right to self-representation in appellate proceedings? *Martinez v. Court of Appeal of California*, 528, U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). Should we now give *Ruiz* an expansive reading and infer that the constitutional requirement to disclose exculpatory evidence, *Brady* material, is a non-waivable, constitutional right and, therefore, a claim of a *Brady* violation does not require preservation? We should definitely not.

Claims of *Brady* violations have been determined to be waived even since *Marin* was decided. As late as 1999, the Court of Criminal Appeals has said that a defendant can procedurally default a *Brady* violation claim by failing to assert it timely. *Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App. 1999). Likewise, this court has said that the failure to request a continuance at the time the *Brady* violation became evident waives the *Brady* complaint. *Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.-Waco

1997, pet. ref'd); *see also Dominguez v. State,* No. 10–02–028–CR (Tex.App.-Waco August 7, 2002) (not designated for publication).

In this case, *Keeter* is complaining that the trial court erred in denying his motion for new trial because of a *Brady* violation. Keeter did not raise a *Brady* complaint in his motion for new trial. And, therefore, the State had not been called upon to defend against a *Brady* complaint by presenting controverting evidence. *See* TEX. R.APP. P. 21.5. Keeter should not be able to assert a *Brady* complaint in this direct appeal when he had an opportunity to specifically do so in his motion for new trial or at the time of the hearing on the motion but failed to do so.

Based on this record, the issue of a *Brady* violation was not made to the trial court with sufficient specificity to make the trial court aware of the complaint, was not apparent from the context of the motion or the testimony at the motion for new trial hearing, and was not ruled on by the trial court. Thus, it was not preserved and we should not be reversing a case on an unpreserved issue. Because the majority does so, I respectfully dissent.