Kerry Eugene Moore v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-00076-CR

Â Â Â Â Â KERRY EUGENE MOORE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # F34469
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
CONCURRING OPINIONAND DISSENT TO ORDER GRANTING MOTION FOR REHEARING
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Finding nothing in the motion for rehearing that causes me to change my analysis, I would
deny the motion for rehearing in its entirety. Finding nothing wrong with the Courtâs original
analysis that affirmed the judgment, as does the majorityâs new analysis, I will adopt the
Courtâs original analysis as my concurring opinion. No further analysis is necessary. I pause
only to note that the majorityâs decision to place all Brady violations in the type two category
of violations under Marin flies in the face of Texas Court of Criminal Appeals precedent. See
Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Â Ed. 2d 215 (1963); Marin v. State,
851 S.W.2d 275 (Tex. Crim. App. 1993). See discovery violation discussed below. The
majority fails to distinguish Brady violations that become apparent during trial from those that
are not discovered until after trial.
Â Â Â Â Â Â What follows is the original text of our analysis, with slight modifications when necessary
to reflect that it is now a concurring opinion.
Â Â Â Â Â Â Kerry Eugene Moore became involved in a dispute with Johnnie Hauerland,
superintendent of the Venus Independent School District, over the final paycheck of Mooreâs
wife, a former employee of Venus ISD. By a two-count indictment, Moore was charged with
felony assault on a public servant and retaliation. See Tex. Penal Code Ann. Â§Â 22.01(a),
(b)(1) (Vernon 2003); id. Â§Â 36.06(a) (Vernon 2003)). A jury found Moore not guilty of
assault, and guilty of retaliation. The jury assessed his punishment at three yearsâ
imprisonment and a fine of ten thousand dollars, and recommended that the imprisonment and
fine be probated.
Â Â Â Â Â Â Moore presents nine issues, several of which present multiple questions: (1)Â the limitation
of his cross-examination of the Stateâs witnesses as to Hauerlandâs character, (2)Â the exclusion
of his character witnesses, (3)Â the denial of impeachment of Hauerland by his prior
convictions, (4)Â the denial of his motion to quash the indictment, (5) the denial of his requested
jury instructions on the duty to report child abuse and the confidentiality of counseling records,
(6)Â the legal and factual sufficiency of the evidence, (7)Â the denial of his request that the State
elect between the two counts of the indictment, (8)Â the denial of his requested instruction on
simple assault, and (9)Â the denial of his motion for mistrial for discovery violations. We
affirm.
Sufficiency of the Evidence

Â Â Â Â Â Â In his sixth issue, Moore contends that the evidence of retaliation was legally and factually
insufficient. In particular, Moore complains that the evidence was insufficient that he
threatened to harm Hauerland, that he intended to retaliate against Hauerland, and that
Hauerland was a public servant. The evidence was legally and factually sufficient.
Standard of Review
Â Â Â Â Â Â A âlegal sufficiency of the evidence review does not involve any weighing of favorable
and non-favorable evidence.â Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim. App.
2000) (citing Cardenas v. State, 30 S.W.3d 384 (Tex. Crim. App. 2000)). Instead, a legal
sufficiency review calls upon the reviewing court to view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Id.; see also Jackson v. Virginia,
443 U.S. 307, 99 S.Â Ct. 2781, 61 L.Â Ed. 2d 560 (1979); Mason v. State, 905 S.W.2d 570, 574
(Tex. Crim. App. 1995).
Â Â Â Â Â Â In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164
(Tex. Crim. App. 1997). We must view all the evidence without the prism of the âin the light
most favorable to the prosecutionâ construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). We ask âwhether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the juryâs determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof.â Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); see also Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
Â Â Â Â Â Â We must also remain cognizant of the factfinderâs role and unique positionâone that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may âbelieve all, some, or none of the testimony.â Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is
not manifestly unjust as to the accused merely because the factfinder resolved conflicting views
of evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App.
1997).
Penal Code: The Offense
Â Â Â Â Â Â The Texas Penal Code creates the offense of obstruction or retaliation as follows:
Â Â Â Â Â Â A person commits an offense if he intentionally or knowingly harms or threatens to
harm another by an unlawful act:
Â Â Â Â Â Â (1) in retaliation for or on account of the service or status of another as a:
Â Â Â Â Â Â (A) public servant, witness, prospective witness, or informant; or
Â Â Â Â Â Â (B) person who has reported or who the actor knows intends to report the
occurrence of a crime; or
Â Â Â Â Â Â (2) to prevent or delay the services of another as a:
Â Â Â Â Â Â (A) public servant, witness, prospective witness, or informant; or
Â Â Â Â Â Â (B)Â person who has reported or who the actor knows intends to report the
occurrence of a crime.

Tex. Penal Code Ann. Â§Â 36.06(a). 
Â Â Â Â Â Â The Penal Code, in turn, defines âpublic servantâ as follows, in relevant part:
a person elected, selected, appointed, employed, or otherwise designated as one of the
following, even if he has not yet qualified for office or assumed his duties:
Â Â Â Â Â Â (A)Â an officer, employee, or agent of government; or
Â Â Â Â Â Â .Â .Â .Â .
Â Â Â Â Â Â (F)Â a person who is performing a governmental function under a claim of right
although he is not legally qualified to do so.

Tex. Penal Code Ann. Â§Â 1.07(a)(41) (Vernon 2003). 
Â Â Â Â Â Â The indictment alleged retaliation in the following terms:
Kerry Eugene Moore .Â .Â . did .Â .Â . intentionally or knowingly threaten to harm
another, to-wit: J. Haverland, a public servant, by an unlawful act in retaliation for or
on account of the services or status of the said J.Â Haverland as a public servant, to-wit: superintendent of the Venus Independent School District, Venus, Texas, said
unlawful act being to harm J.Â Haverland, and said threat was communicated to
J.Â Haverland in person .Â .Â .Â .

Â Â Â Â Â Â The trial court abstractly instructed the jury as follows, in part:
Â Â Â Â Â Â Our law provides that a person commits the offense of Retaliation if the person
intentionally or knowingly threatens to harm another by an unlawful act in retaliation
for or on account of the service of a person as a public servant.
Â Â Â Â Â Â The term âpublic servantâ means a person elected, selected, appointed,
employed, or otherwise designated as an officer, employee, or agent of government.
Â Â Â Â Â Â You are instructed that J. Haverland is a public servant.
Â Â Â Â Â Â You are instructed that the superintendent of a public school district acts within
the lawful discharge of his official duties, so long as he is acting within the capacity
as superintendent.
Â Â Â Â Â Â You are instructed that the administration of financial matters involving a school
district is within the capacity and official duties of the superintendent of said district.

Â Â Â Â Â Â The trial courtâs application paragraph tracked the language of the indictment.Â Â 
Evidence
Â Â Â Â Â Â The evidence was as follows. Before her resignation, Mooreâs wife, Karen, had been
employed as a counselor by the Venus ISD. At the time of Karen Mooreâs resignation, there
was a dispute over a new policy that teachers report suspected child abuse to school officials
before reporting it, as required by statute, to the appropriate law enforcement or other agency. 
See Tex. Fam. Code Ann. Â§Â§Â 261.101, 261.103 (Vernon 2002). When she resigned, Karen
Moore retained confidential student records that she had maintained in the course of her
employment. Relying on a provision of Venus ISDâs standard employment contract,
Hauerland withheld Karen Mooreâs final paycheck until she returned or accounted for the files. 
Venus ISD and the Moores consulted attorneys, who exchanged correspondence regarding the
dispute.
Â Â Â Â Â Â On the date of the incident, Kerry Moore went to the Venus ISD offices to try to get his
wifeâs check. The payroll director told Moore that Moore would have to speak with
Hauerland. Hauerland was then employed as the superintendent of Venus ISD. As chief
operating officer reporting to the school board, the superintendent had the job of overseeing
personnel.
Â Â Â Â Â Â Moore demanded the check and, by the testimony of Hauerland and other witnesses, said
that he would have the check from Hauerland or would âkick Hauerlandâs butt.â By the
testimony of the Stateâs witnesses, Moore poked Hauerland in the chest, grabbed him by his
clothes, and threw him against a wall and onto the ground. Moore testified that he only either
gestured at Hauerland or lightly touched him. Moore denied threatening Hauerland, but did
testify that he accused Hauerland of misusing his authority in order to harm Mooreâs wife. 
Thereafter, in any case, Moore and Hauerland ended up on the ground with Moore on top,
with his fist drawn back to strike Hauerland. At this point, office workers summoned a school
maintenance man and others to come to Hauerlandâs aid, and called the Venus Police
Department. 
Â Â Â Â Â Â Moore testified that he realized that what he was doing was wrong, relented, and left
voluntarily. The Stateâs witnesses, however, testified that Moore had to be pulled off of
Hauerland, and physically escorted off of school property. The Stateâs witnesses testified that
as Moore was being escorted away, he said that after he made bail he would come back to
âgetâ Hauerland, and they took this as a threat to kill or harm him. Moore denied saying this;
Moore testified that he had said only that he would get satisfaction by legal means.
Â Â Â Â Â Â Each side called attorneys who testified as to whether Venus ISD could legally withhold
the check. The Mooresâ civil attorney testified that the withholding of the check was an illegal
garnishment under a void contract; an attorney for Venus ISD testified that the withholding
was the legal enforcement of a valid contractual provision.
Legal Sufficiency: Application
Â Â Â Â Â Â First, Moore challenges the legal sufficiency of the evidence that he threatened to harm
Hauerland. Stateâs witnesses testified that Moore threatened to âkick Hauerlandâs buttâ if
Hauerland did not give him the check, and threatened to âgetâ Hauerland. Those witnesses
testified that they understood those statements as threats to harm Hauerland. 
Â Â Â Â Â Â Next, Moore challenges the legal sufficiency of the evidence that he intended to retaliate
against Hauerland. Moore testified that he told Hauerland that he was wrong to use his
authority to withhold the check to harm the Moores. Moore threatened to harm Hauerland if
he did not give Moore the check, and threatened to harm Hauerland after he refused to give
Moore the check.
Â Â Â Â Â Â Lastly, Moore challenges the legal sufficiency of the evidence that Hauerland was a public
servant. In particular, Moore argues that Hauerland was not acting as a public servant in
withholding the check. At the time of the incident, Hauerland was employed as superintendent
of Venus ISD, was at work in his office in the Venus ISD administrative building, and was
performing his duty of supervising personnel, both when he ordered the check withheld and
when he came to respond to Mooreâs inquiry about the check. 
Â Â Â Â Â Â As to each of Mooreâs challenges to the legal sufficiency of the evidence, viewing the
evidence in the light most favorable to the State, a rational factfinder could have found beyond
a reasonable doubt the element that Moore challenges. Thus, the evidence was legally
sufficient.
Factual Sufficiency: Application
Â Â Â Â Â Â Moore also argues that the evidence was factually too weak to support the verdict. First,
Moore challenges the factual sufficiency of the evidence that he threatened to harm Hauerland. 
Contrary to the testimony of several witnesses that Moore threatened to âkick Hauerlandâs
buttâ and to âgetâ Hauerland, and thus to harm Hauerland, Moore points only to his testimony
denying that he made those statements.
Â Â Â Â Â Â Next, Moore challenges the factual sufficiency of the evidence that he intended to retaliate
against Hauerland. Contrary to the testimony of several witnesses that Moore threatened to
harm Hauerland if he did not give Moore the check, and again threatened to harm Hauerland
after he refused to give Moore the check, Moore points only to his testimony denying that he
made those statements.
Â Â Â Â Â Â Lastly, Moore challenges the factual sufficiency of the evidence that Hauerland was acting
as a public servant. Hauerland testified that he was employed as school superintendent, was in
his office performing his duties when he was approached by Moore, and was enforcing a valid
contractual provision that allowed him to withhold the check. An attorney also testified that
the contractual provision was valid. Another attorney and a teachers organization
representative testified that the provision was void and unenforceable.
Â Â Â Â Â Â On none of the elements challenged by Moore was the evidence so factually weak as to
undermine confidence in the verdict. Moore does not argue that the proof of those elements is
outweighed by contrary proof. Thus, I would overrule Mooreâs sixth issue.
Impeachment of the Stateâs Character Witnesses

Â Â Â Â Â Â In his first issue, Moore contends that the trial court erred in sustaining the Stateâs
objection to Mooreâs attempted cross-examination of the Stateâs character witnesses. To the
extent that Moore preserves his complaint on appeal, the trial courtâs error was harmless.
Â Â Â Â Â Â In rebuttal, the State called three character witnesses who testified that in their opinion
Hauerland had a good reputation for truthfulness: Joe Russell, a Venus ISD school board
member; Delinda Cervantez, a Venus ISD employee; and Brian Blackwell, a Venus ISD
middle-school principal. For each of these witnesses, Moore made an offer of proof of the
evidence that he sought to introduce through the witness in question-and-answer form. See
Tex. R. Evid. 103(a)(2). Russell testified outside the presence of the jury that he was aware
that Hauerland had committed one shoplifting offense; Blackwell testified that he was aware
that Hauerland had twice been convicted of theft; and Cervantez testified that she had heard
that Hauerland had twice been convicted of theft. As to Russell, the State objected generally to
improper impeachment. As to all of these witnesses, the State objected that the danger of
unfair prejudice of evidence of these convictions substantially outweighed their probative value
for impeachment. See Tex. R. Evid. 403. The trial court sustained the objections. 
Â Â Â Â Â Â Moore preserved his complaint at trial as to each witness, by making an offer of proof of
the excluded evidence. See Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2); Warner v.
State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per curiam); see also Alonzo v. State, 67
S.W.3d 346, 355 (Tex. App.âWaco 2001, pet. granted on other grounds).
Â Â Â Â Â Â However, Moore forfeits his complaint in part on appeal. An appellant who presents an
issue on appeal other than that presented in the trial court forfeits the issue on appeal. Tex. R.
App. P. 33.1; Turner v. State, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002), cert. denied, 123
S.Â Ct. 1760, 155 L.Â Ed. 2d 519 (2003); Montoya v. State, 43 S.W.3d 568, 571 (Tex.
App.âWaco 2001, no pet.). The trial court ruled that Mooreâs attempted means of
impeachment was improper only as to Russell. As to Cervantez and Blackwell, the court ruled
only that the danger of unfair prejudice of evidence of Hauerlandâs shoplifting citations
substantially outweighed the evidenceâs impeachment value. Moore does not argue that the
court erred in its Rule 403 analysis. Thus, the only ruling of the trial court of which Moore
complains on appeal that comports with his trial objection is that the impeachment of Russell as
to his knowledge of Mooreâs shoplifting citations was by an improper means.
Â Â Â Â Â Â In this regard, the trial court erred. A character witness is subject to proper cross-examination on the basis of the witnessâs knowledge of the character of the person about whom
the witness is testifying. Any witness is subject to impeachment. Tex. R. Evid. 607. One
means of impeachment is to undermine the basis of the witnessâs knowledge of the subject of
the testimony. A character witness, thus, who testifies to a personâs good character, is subject
to cross-examination on specific instances of conduct by the person that would be inconsistent
with a good character. Tex. R. Evid. 405(a); Wilson v. State, 71 S.W.3d 346, 350 (Tex.
Crim. App. 2002); Murphy v. State, 4 S.W.3d 926, 930 (Tex. App.âWaco 1999, pet. refâd). 
In general, a witness who testifies as to his or her opinion of a personâs character is subject to
cross-examination by questions of the form âdo you knowâ; that is, questions asking whether
the character witnessâs knowledge of the personâs character includes knowledge of specific bad
acts committed by the person. Wilson at 350; see Murphy at 932.
Â Â Â Â Â Â There are at least two limitations on the impeachment of an opinion character witness by
specific instances of conduct. âFirst, the incidents inquired about must be relevant to the
character traits at issue. Second, the alleged bad act must have a basis in fact.â Wilson at 351-52 (internal citation omitted); accord Murphy at 930-31.
Â Â Â Â Â Â Moore properly sought to impeach Russell with his knowledge of Hauerlandâs theft
convictions in accordance with the Rules of Evidence. Hauerlandâs bad acts that Moore
wanted to use to impeach Russellâs knowledge of Hauerlandâs character had a basis in fact,
since Hauerland admitted to the theft convictions. Those convictions were relevant to
Hauerlandâs character for truthfulness; theft is among the most damning crimes of deception. 
Thus, the trial court erred in sustaining the Stateâs objection to improper impeachment.
Â Â Â Â Â Â The error, however, is harmless. Improper limitations on cross-examination violate the
confrontation clauses of the United States and Texas Constitutions, and thus implicate the
constitutional standard for harmless error review. See U.S. Const. amend. VI; Tex. Const.
art. I, Â§Â 10; Tex. R. App. P. 44.2(a); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App.
2000). Under that standard, if a court of appeals finds âconstitutional error that is subject to
harmless error review, the court of appeals must reverse a judgment of conviction . .Â . unless
the court determines beyond a reasonable doubt that the error did not contribute to the
conviction.â Tex. R. App. P. 44.2(a). A confrontation clause violation is subject to harmless
error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89
L.Â Ed. 2d 674 (1986); Young v. State, 891 S.W.2d 945, 948 (Tex. Crim. App. 1994); see
Shilling v. State, 60 S.W.3d 280, 283 (Tex. App.âWaco 2001, pet. refâd).
Â Â Â Â Â In analyzing harm from the erroneous exclusion of defense cross-examination of a Stateâs
witness, a court begins with the assumption that âthe damaging potential of the cross
examination w[as] fully realized.â Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438; Young at
948. The court then considers the following factors:
(1)Â the importance of the witnessâs testimony in the prosecution's case,

(2)Â whether the testimony was cumulative,

(3)Â the presence or absence of evidence corroborating or contradicting the testimony
of the witness on material points,

(4)Â the extent of cross-examination otherwise permitted, and

(5)Â the overall strength of the prosecutionâs case.

Id. Under this assumption and in light of these factors, the court must determine whether the
error was harmless beyond a reasonable doubt. Id.; Tex. R. App. P. 44.2(a).
Â Â Â Â Â Thus, we assume that, had Russell testified before the jury as he had outside its presence,
he would have testified that he knew about one of Hauerlandâs shoplifting citations and did not
know about the other. However, three defense witnesses testified that Hauerland had a poor
character for truthfulness, and Moore further impeached Hauerland with a prior inconsistent
statement. Two witnesses other than Russell testified as to Hauerlandâs good character for
truthfulness. Moreover, Hauerlandâs testimony regarding the elements of the offense was
corroborated by several other witnesses, and was contradicted only by Mooreâs bald denials. 
The trial court otherwise generally allowed free cross-examination. Lastly, the overall
strength of the Stateâs well-corroborated evidence was overwhelming. In light of these factors,
the trial courtâs error in excluding the evidence was harmless beyond a reasonable doubt. I
would overrule Mooreâs first issue.Limitation of Mooreâs Character Witnesses
Â Â Â Â Â In his second issue, Moore contends that the trial court erred in sustaining the Stateâs
objections to Mooreâs offer of evidence of his good character for being truthful, and his offer
of opinion evidence of his good character for being peaceful and law-abiding. If the trial court
erred, the error was harmless.
Â Â Â Â Â Before Mooreâs attorney began to present his case, he informed the court that he intended
to call character witnesses for Mooreâs good character for being peaceful, law-abiding, and
truthful. The State objected that Mooreâs character for peacefulness was not at issue, and that
Mooreâs credibility had not yet been impeached. The court limited the testimony of Mooreâs
character witnesses to reputation evidence of Mooreâs character. 
Â Â Â Â Â Moore called his pastor, who testified on direct examination that Mooreâs reputation for
being peaceful and law-abiding was good. Moore testified in his main case, and the State
cross-examined him. Thereafter, Mooreâs attorney again offered evidence of Mooreâs
character for truthfulness. The State objected that this was improper bolstering. The trial
court again limited the evidence to reputation evidence of Mooreâs character for being peaceful
and law-abiding.
Â Â Â Â Â Thereafter, Moore called a friend, who testified that Mooreâs reputation for being peaceful
and law-abiding was good.
Â Â Â Â Â Moore preserved his complaints at trial, since the substance of the testimony that he sought
to offer was apparent from the context. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(2).
Evidence of Truthful Character
Â Â Â Â Â The Texas Rules of Evidence provide for the impeachment and rehabilitation of a witnessâs
credibility:
Â Â Â Â Â The credibility of a witness may be attacked or supported by evidence in the form
of opinion or reputation, but subject to these limitations:
Â Â Â Â Â (1)Â the evidence may refer only to character for truthfulness or
untruthfulness; and
Â Â Â Â Â (2)Â evidence of truthful character is admissible only after the character of the
witness for truthfulness has been attacked by opinion or reputation evidence or
otherwise.

Tex. R. Evid. 608(a).
Â Â Â Â Â Moore argues that the Stateâs cross-examination of him impeached his credibility by
attacking his character for truthfulness. âVigorous cross-examinationâ can, in principle,
effectively impeach a witnessâs credibility. See Duckett v. State, 797 S.W.2d 906, 918-19
(Tex. Crim. App. 1990), overruled on other grounds, Cohn v. State, 849 S.W.2d 817, 819
(Tex. Crim. App. 1993). However, before character evidence of truthfulness is admissible to
rehabilitate an impeached witnessâs credibility, the method of impeachment must have attacked
the witnessâs character for truthfulness, not just the witnessâs testimony. 1 Steven Goode et
al., Texas Practice: Guide to the Texas Rules of Evidence Â§Â 608.2 (3d ed. 2002). 
Reputation or opinion testimony as to the witnessâs character for untruthfulness impeaches the
witness for purposes of Rule 608(a); merely contradicting the witnessâs testimony by cross-examination or otherwise generally does not. Stitt v. State, 102 S.W.3d 845, 848 (Tex.
App.âTexarkana 2003, pet. refâd); Spector v. State, 746 S.W.2d 946, 951 (Tex.
App.âAustin 1988, pet. refâd).
Â Â Â Â Â The cross-examination of Moore was unexceptional, and not particularly vigorous. 
Moreover, while the State pointed out contradictions within Mooreâs testimony and between
Mooreâs testimony and that of other witnesses, the State did not directly attack Mooreâs
character for truthfulness. Thus, the trial court did not abuse its discretion in excluding
evidence of Mooreâs character for truthfulness.
Opinion Evidence of Peaceful and Law-Abiding Character
Â Â Â Â Â If the trial court erred in excluding opinion evidence of Mooreâs character for being
peaceful and law-abiding, the error was harmless. 
Â Â Â Â Â The Rules of Evidence provide for an exception to the general prohibition against character
conformity evidence for â[e]vidence of a pertinent character trait offered .Â .Â . by an accused in
a criminal case, or by the prosecution to rebut the same.â Tex. R. Evid. 404(a)(1). In a
prosecution for a crime of violence, the defendantâs character for being peaceful is pertinent,
since evidence of peaceful character makes it less likely that the defendant committed the
crime. For example, â[i]n a murder case, the accusedâs reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry.â Wheeler v. State, 67 S.W.3d 879, 882 n.2
(Tex. Crim. App. 2002) (quoting Valdez v. State, 2 S.W.3d 518, 520 (Tex. App.âHouston
[14th Dist.] 1999, pet. refâd)).
Â Â Â Â Â The Rules of Evidence also generally provide that when character evidence is admissible, it
may only be proved on direct examination âby testimony as to reputation or by testimony in
the form of an opinion.â Tex. R. Evid. 405(a). Under the Rules, moreover, the rigid
common-law distinction between opinion and reputation evidence has been relaxed. See
Murphy v. State, 4 S.W.3d 926, 932-33 (Tex. App.âWaco 1999, pet. refâd); 1 Goode,
Guide to the Texas Rules of Evidence Â§Â 405.2.2, at 266-67.
Â Â Â Â Â Although the trial court did not permit Moore to present opinion evidence of his character
for being peaceful and law-abiding, the court did permit reputation evidence. Moore does not
suggest how opinion evidence would have been preferable to reputation evidence, and we do
not see how it would be. Indeed, even under the common law, opinion evidence was
considered inferior to reputation evidence. 1 Goode Â§Â 405.2.2. Thus, Mooreâs âsubstantial
rightsâ were not affected by the limitation of evidence of Mooreâs peaceful character to
reputation evidence. See Tex. R. App. P. 44.2(b).
Â Â Â Â Â I would overrule Mooreâs second issue.
Impeachment of Hauerland by Prior ConvictionsIn his third issue, Moore contends that the trial court erred in sustaining the Stateâs
objection to the impeachment of Hauerland by evidence of prior convictions. The trial court
did not abuse its discretion in sustaining the objection to evidence of remote convictions.
Â Â Â Â Â Before Hauerland testified on direct examination, Moore laid the predicate for impeaching
Hauerland by evidence of his prior convictions for theft. See Tex. Penal Code Ann.
Â§Â 31.03(a) (Vernon 2003). On cross-examination by Moore outside the presence of the jury,
Hauerland testified that he had been arrested for shoplifting in 1987 and 1988, and had been
issued a citation and paid a fine in municipal court in each case. Hauerland testified that he
had not been convicted of a crime since. The trial court overruled Mooreâs request to cross-examine Hauerland with the remote convictions in the juryâs presence. Thus, Moore preserved
his complaint for review. See Tex. R. App. P. 33.1(a).
Â Â Â Â Â The Texas Rules of Evidence generally provide for the impeachment of a witness by
evidence of the witnessâs prior convictions:
Â Â Â Â Â For the purpose of attacking the credibility of a witness, evidence that the witness
has been convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved moral
turpitude, regardless of punishment .Â .Â .Â .

Tex. R. Evid. 609(a). The general rule is that such convictions within the ten years prior to
the witnessâs testimony are admissible only if the trial âcourt determines that the probative
value of admitting this evidence outweighs its prejudicial effect to a party.â Id. For âremoteâ
convictions more than ten years old, however, a more stringent standard applies:
Â Â Â Â Â Evidence of a conviction under this rule is not admissible if a period of more than
ten years has elapsed since the date of the conviction or of the release of the witness
from the confinement imposed for that conviction, whichever is the later date, unless
the court determines, in the interests of justice, that the probative value of the
conviction supported by specific facts and circumstances substantially outweighs its
prejudicial effect.

Tex. R. Evid. 609(b). The balancing of the probative value and prejudicial effect of evidence
of a witnessâs prior convictions usually arises where the witness is the defendant. In those
cases, in weighing the probative value and prejudicial effect of evidence of convictions, the
trial court should consider several factors: 

(1)Â the impeachment value of the prior crime,

(2)Â the temporal proximity of the past crime and the witnessâs subsequent criminal
history,

(3)Â the similarity between the past crime and the offense being prosecuted,

(4)Â the importance of the witnessâs testimony, and

(5)Â the importance of the credibility issue.

Theus v. State, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); White v. State, 21 S.W.3d 642,
646 (Tex. App.âWaco 2000, pet. refâd). The impeachment value of crimes of deception is
high, and their prejudicial effect is lower than that of crimes of violence. Theus at 880; White
at 647. The passage of time between the witnessâs last conviction and the time of the witnessâs
testimony tends to reduce the convictionâs probative value. Id. The similarity of the prior
conviction and the charged offense is not applicable where, as here, the witness does not stand
charged with an offense. Lastly, the importance of the witnessâs testimony, and thus the
importance of the witnessâs credibility, decrease with the corroboration of the testimony by
other evidence; and so decreases the probative value of evidence of the witnessâs convictions. 
Id. 
Â Â Â Â Â In ruling on the admissibility of prior convictions for impeachment, the trial court has
âwide discretion.â Theus at 881; White at 646. Thus, an appellate court may reverse such a
ruling only for a âclear abuse of discretion.â Theus at 881. The trial court abuses its
discretion in ruling on the admissibility of such evidence only if the ruling lies âoutside the
zone of reasonable disagreement.â Id.; White at 646. 
Â Â Â Â Â Theft is a crime of moral turpitude. Bowden v. State, 628 S.W.2d 782, 788 (Tex. Crim.
App. 1982); Jackson v. State, 50 S.W.3d 579, 592 (Tex. App.âFort Worth 2001, pets. refâd).
Â Â Â Â Â The trial court did not err in excluding evidence of Hauerlandâs remote theft convictions. 
The dates of Hauerlandâs convictions are not in the record, but the parties do not dispute that
the convictions were remote. In themselves, Hauerlandâs two citations for petty theft some
thirteen or fourteen years before trial, without any intervening convictions, have little bearing
on Hauerlandâs present credibility. Moreover, at least five other witnesses testified to Mooreâs
threats against Hauerland. Thus, the trial court did not abuse its discretion in finding that the
probative value of the convictions did not outweigh the danger of unfair prejudice. I would
overrule Mooreâs third issue.
Motion to Quash the Indictment

Â Â Â Â Â In his fourth issue, Moore contends that the trial court erred in overruling Mooreâs motion
to quash the indictment. Moore forfeits his issue on appeal.
Â Â Â Â Â Prior to trial, Moore filed a motion to quash the indictment on the grounds that:
Â Â Â Â Â It is alleged in COUNT TWO of the Indictment that the defendant did threaten to
harm another, to-wit: J. Haverland, a public servant, âby an unlawful act .Â .Â .Â [.]â 
Said COUNT TWO fails to allege[] any manner and means by which the Defendant
committed an âunlawful act.â 

On the day of trial, Moore presented the motion to the trial court, and argued, âthereâs no act
alleged and I was just asking for the manner and means of the unlawful act, that it be stated
with specificity to give us notice of what weâre accused of.â The trial court overruled the
motion. Moore thus preserved the complaint at trial. See Tex. R. App. P. 33.1(a).
Â Â Â Â Â But Moore forfeits his complaint on appeal. Mooreâs issue presented on appeal does not
comport with his trial complaint. An appellant who presents an issue on appeal other than that
presented in the trial court forfeits the issue on appeal. See Tex. R. App. P. 33.1; Turner, 87
S.W.3d at 117; Montoya, 43 S.W.3d at 571.
Â Â Â Â Â At trial, Moore complained of the indictmentâs notice of the manner and means of the
unlawful act that he threatened to commit against Hauerland. On appeal, relying on Doyle v.
State, Moore complains of the indictmentâs notice of the manner and means by which he
communicated the threat to Hauerland. See Doyle v. State, 661 S.W.2d 726, 729 (Tex. Crim.
App. 1983) (per curiam). On appeal, Moore argues, âPrior to the commencement of trial,
Appellant was entitled to know the specific unlawful act that constituted the threat. Was the
act verbal, i.e., a statement made by Appellant, or was the act some physical conduct on the
part of the Appellant, perceived as a threat by the complainant?â This issue on appeal does not
comport with Mooreâs complaint at trial. Thus, I would overrule Mooreâs fourth issue.
Jury Instructions

Â Â Â Â Â In his fifth issue, Moore contends that the trial court erred in overruling Mooreâs requested
jury instructions on the duty to report child abuse and the confidentiality of counseling records. 
In his eighth issue, he argues that the trial court erred in overruling his requested instruction on
simple assault as a lesser included offense. The court did not err.
Â Â Â Â Â The Texas Code of Criminal Procedure requires that the trial court instruct the jury on the
âlaw applicable to the case.â Tex. Code Crim. Proc. Ann. art.Â 36.14 (Vernon Supp. 2004). 
Defensive Instructions
Â Â Â Â Â Moore requested two special charges in writing prior to the submission of the charge to the
jury. His requested instruction on the duty to report suspected child abuse or neglect generally
tracked the language of Texas Family Code Sections 261.101, 261.103, and 261.105. See
Tex. Fam. Code Ann. Â§Â§Â 261.101(a)-(b), 261.103(a), 261.105(a) (Vernon 2002). His
requested instruction on the confidentiality of investigations of suspected child abuse loosely
tracked the language of Family Code Section 261.201. See id. Â§Â 261.201(a) (Vernon 2002). 
The trial court overruled Mooreâs requests. Thus, Moore preserved these complaints at trial. 
See Tex. R. App. P. 33.1(a).
Â Â Â Â Â At trial and on appeal, Moore argues that Hauerland was not acting as a public servant, as
required for retaliation, at the time of the incident, since Hauerlandâs withholding of the check
was contrary to those Family Code sections. The trial court was not required to give those
defensive instructions.
Â Â Â Â Â â[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the Stateâs case.â Ortiz v. State,
93 S.W.3d 79, 92 (Tex. Crim. App. 2002), cert. denied, 123 S. Ct. 1901, 155 L.Â Ed. 2d 824
(2003); accord Giesberg v. State, 984 S.W.2d 245, 248-51 (Tex. Crim. App. 1998). Mooreâs
requested instructions on the duty to report suspected child abuse and on the confidentiality of
investigations of suspected child abuse do not implicate statutory defenses or affirmative
defenses. Those instructions would only serve, if they are of any effect, to negate the âpublic
servantâ element of the offense of retaliation. Thus, the trial court did not err in refusing the
instructions. I would overrule Mooreâs fifth issue.
Lesser-Included-Offense Instruction
Â Â Â Â Â Before the submission of the charge to the jury, Moore requested in writing an instruction
on simple assault by threat as a lesser included offense of retaliation. See Tex. Penal Code
Ann. Â§Â 22.01(a)(2). The trial court denied the request. Thus, Moore preserved this complaint
at trial. See Tex. R. App. P. 33.1(a).
Â Â Â Â Â The analysis of whether an instruction on a lesser included offense is required has two
steps. Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985). First, the court must âdecide whether the offense
is actually a lesser-included offense of the offense chargedâ under Texas Code of Criminal
Procedure Article 37.09. Feldman at 750; see Arevalo v. State, 943 S.W.2d 887, 889 (Tex.
Crim. App. 1997); Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); Tex.
Code Crim. Proc. Ann. art.Â 37.09 (Vernon 1981). Next, the court must determine whether
âthe record contains some evidence that would permit a rational jury to find that the defendant
is guilty only of the lesser offense,â that is, guilty of the lesser offense and not guilty of the
charged offense. Feldman at 750; accord Rousseau at 672. Only if some affirmative evidence
so establishes the lesser included offense as a âvalid rational alternativeâ to the charged offense
is an instruction on the lesser included offense required. Feldman at 750; Wesbrook v. State,
29 S.W.3d 103, 113-14 (Tex. Crim. App. 2000).
Â Â Â Â Â Moore argues, under Code of Criminal Procedure Article 37.09(2), that assault by threat is
a lesser included offense of retaliation by threat. Article 37.09(2) provides that:
Â Â Â Â Â An offense is a lesser included offense if:
Â Â Â Â Â .Â .Â .
Â Â Â Â Â (2)Â it differs from the offense charged only in respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission .Â .Â .Â .

Tex. Code Crim. Proc. Ann. art.Â 37.09. Moore argues that assault by threat, without the
allegation of a public servant victim, is a less serious injury to the same victim than retaliation
by threat against a public servant.
Â Â Â Â Â The elements of retaliation are that:
Â Â Â Â Â A person commits an offense if he intentionally or knowingly harms or threatens
to harm another by an unlawful act:
Â Â Â Â Â (1)Â in retaliation for or on account of the service or status of another as a:
Â Â Â Â Â Â Â Â Â Â Â Â (A)Â public servant, witness, prospective witness, or informant; or
Â Â Â Â Â Â Â Â Â Â Â Â (B)Â person who has reported or who the actor knows intends to report the
occurrence of a crime .Â .Â .Â .
Tex. Penal Code Ann. Â§Â 36.06(a). The indictment alleges that Moore intentionally or
knowingly threatened to harm Hauerland by an unlawful act in retaliation for or on account of
the services or status of Hauerland as a public servant. The indictment also pleaded that
Hauerlandâs services or status as a public servant was as Venus ISD superintendent, and that
the unlawful act was to harm Hauerland.
Â Â Â Â Â The elements of assault by threat are that:
Â Â Â Â Â A person commits an offense if the person:
Â Â Â Â Â .Â .Â .
Â Â Â Â Â (2)Â intentionally or knowingly threatens another with imminent bodily injury,
including the personâs spouse .Â .Â .Â .

Tex. Penal Code Ann. Â§Â 22.01(a)(2).
Â Â Â Â Â The presence or absence of a victimâs service or status as a public servant does not render
the injury to the victim more or less serious for purposes of Article 37.09. More serious and
less serious injuries are usually distinguished, for purposes of determining lesser included
offenses, as between the less serious, bodily injury and the more serious, serious bodily injury. 
See Hall v. State, 81 S.W.3d 927, 931 (Tex. App.âDallas 2002, pet. granted in part); Tex.
Penal Code Ann. Â§Â 1.07(a)(8), (46) (Vernon 2003). Thus, the trial court did not err in
denying Mooreâs requested lesser included instruction. I would overrule Mooreâs eighth issue.
Election

Â Â Â Â Â In his seventh issue, Moore contends that the trial court erred in overruling his request that
the State elect between the two counts of the indictment. Moore argues that the court should
have required the State to elect to proceed under the more specific of two offenses in pari
materia. The trial court did not err in overruling Mooreâs request.
Â Â Â Â Â Moore was indicted for one count of assault on a public servant by threat and for one count
of retaliation against a public servant by threat. Prior to trial, Moore filed a motion to require
the State to elect to proceed on only one count, on the grounds that both counts âallege the two
different manners and means of committing the same statutory offenseâ of assault. Moore did
not argue on which count the State must proceed. The trial court overruled the motion.
Â Â Â Â Â On appeal, Moore argues that assault on a public servant and retaliation against a public
servant are in pari materia. Statutes are in pari materia when they âdeal with the same
general subject, have the same general purpose, or relate to the same person or thing or class
of persons or things.â Huynh v. State, 901 S.W.2d 480, 483 (Tex. Crim. App. 1995) (quoting
Cheney v. State, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988)); Alejos v. State, 555 S.W.2d
444, 449-50 (Tex. Crim. App. 1977) (op. on rehâg). âSimilarity of purpose or object is the
most important factor in assessing whether two provisions are in pari materia.â Burke v.
State, 28 S.W.3d 545, 547 (Tex. Crim. App. 2000). Statutes may conflict â[w]here one
statute deals with a subject in general terms, and another deals with a part of the same subject
in a more detailed way.â Id. at 546-47. When such general and specific statutes in pari
materia conflict irreconcilably, the specific statute controls. Tex. Govât Code Ann.
Â§Â 311.026 (Vernon 1998); see BurkeÂ at 546-47. Thus, when general and specific penal statutes
in pari materia irreconcilably conflict, the State may prosecute only under the specific statute. 
Burke at 547 n.3.
Â Â Â Â Â Moore fails to show that the trial court erred in overruling his motion for election. On
appeal, Moore argues only that the indictment pleaded the manner and means of assault more
specifically than it pleaded the manner and means of retaliation. The specificity of pleading,
however, does not determine whether statutes are in pari materia or, if they are in pari
materia, which is the more specific. Moore does not argue that assault is the more specific
statute as a matter of legislative intent. Accordingly, to the extent that Mooreâs argument on
appeal comports with his argument at trial, the argument is inadequately briefed. See Tex. R.
App. P. 38.1(h); McCarthy v. State, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App.), cert. denied,
536 U.S. 972, 122 S.Â Ct. 2693, 153 L.Â Ed. 2d 862 (2002); Tubbs v. State, 57 S.W.3d 519,
521 (Tex. App.âWaco 2001, pet. refâd). I would overrule Mooreâs seventh issue.
Discovery Violations

Â Â Â Â Â In his ninth issue, Moore contends that the trial court erred in overruling Mooreâs motion
for mistrial, which alleged that the State had violated the courtâs discovery orders, including a
motion to disclose exculpatory evidence. Moore forfeited his complaints.
Â Â Â Â Â Some eight months before trial, Moore filed discovery motions. Mooreâs discovery motion
under Texas Code of Criminal Procedure Article 39.14 moved the court to order the State to
produce certain âevidentiary material which is in the possession, custody, or control of the
State or any of its agencies,â including:
Â Â Â Â Â [t]he criminal record of any prospective witness, including indictments,
convictions, acquittals or charges now pending against any State witness which
information might conceivably be useful to the defense to determine whether there
exists bias or prejudice on the part of the Stateâs witnesses.

See Tex. Code Crim. Proc. Ann. art.Â 39.14 (Vernon Supp. 2004). His Brady motion moved
the court to order the State to â[d]isclose to the Defendant any exculpatory and/or mitigating
facts within the possession, custody, or control of the District Attorney or any of his agents.â 
See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Â Ed. 2d 215 (1963). Several
weeks before trial, the court granted the Brady motion, and granted the Article 39.14 motion in
part, including granting the paragraph quoted above.
Â Â Â Â Â On the second day of trial, Moore again sought enforcement of the courtâs orders. The
attorney for the State responded that the State did not have in its possession any material
covered by the discovery orders which the State had not already provided to Moore.
Â Â Â Â Â Later that day, the State called Dandy Earley, a Venus ISD principal and assistant
superintendent. After Earley testified on direct examination, Moore elicited from Earley
outside the presence of the jury that Earley had been indicted, but not arrested, for burglary. 
On the basis of the Stateâs non-disclosure of Earleyâs indictment, Moore moved for mistrial. 
The attorneys for the State stated on the record that they were unaware of the indictment. 
When the trial court asked Moore how the indictment was material, Moore responded only that
the Stateâs non-disclosure called into question the Stateâs good faith. Moore did not move for a
continuance. The trial court overruled the motion. Moore later introduced the indictment
against Earley for purposes of the appellate record.
Â Â Â Â Â In order to preserve for appellate review a Brady complaint concerning evidence that comes
to light during trial, the defendant must move for a continuance to prepare to respond to the
evidence. Wilson v. State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999); Yates v. State, 941
S.W.2d 357, 364 (Tex. App.âWaco 1997, pet. refâd); Apolinar v. State, 106 S.W.3d 407,
421 (Tex. App.âHouston [1st Dist.] 2003, pet. granted on other grounds); but see Keeter v.
State, 105 S.W.3d 137, 144 (Tex. App.âWaco 2003, pet. granted) (plurality op.) (dicta)
(âBrady claims should .Â .Â . need not be âpreservedâ for appellate review.â). Likewise, in order
to preserve a complaint concerning discovery, a party must move for a continuance. Smith v.
State, 779 S.W.2d 417, 431 (Tex. Crim. App. 1989).
Â Â Â Â Â Moore failed to move for a continuance to prepare to respond to the evidence of the
indictment against Earley, which evidence, in any case, was already in Mooreâs possession. 
Thus, Moore forfeited his complaint. I would overrule Mooreâs ninth issue.
CONCLUSION

Â Â Â Â Â I would affirm the judgment.
Â 
TOM GRAY
Chief Justice
Concurring opinion and dissent to 
Â Â order granting motion for rehearing delivered and filed July 21, 2004
Publish



317.  We overrule his fifth and sixth issues.

INEFFECTIVE ASSISTANCE

Â Â Â Â Â Â Â Â Â  Glockzin argues, in his eighth issue,
that his trial counsel rendered ineffective assistance by failing to: (1)
object to constructive amendment of the indictment and the courtÂs definition
of Âsexual contact;Â (2) request a limiting instruction at guilt-innocence and
a reasonable doubt instruction at punishment; and (3) object to the courtÂs comment
on the weight of the evidence.

Because we have determined that no error was
committed in any of these instances, counsel was not ineffective for failing to
make these objections.Â  See
Ladd v. State, 3 S.W.3d 547, 565 (Tex. Crim.
App. 1999).Â  Therefore, we
overrule GlockzinÂs eighth issue.

The judgment is affirmed.Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â  

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurs in the judgment
which affirms GlockzinÂs convictions without a separate opinion)

Affirmed

Opinion delivered and
filed February 21, 2007 

Publish

[CR25]









[1] Â Â Â Â Â Â Â Â Â  Although there exists some doubt as
to whether Glockzin is J.M.Âs biological father, he assumed this role.Â  He and
J.M.Âs mother, M.G., are divorced.Â  J.M. resides with her mother. 

Â 





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  J.M. later acknowledged that
the bed covers prevented her from seeing GlockzinÂs finger.Â  

Â 





[3] Â Â Â Â Â Â Â Â Â  At trial, J.M. used anatomically
correct dolls to demonstrate GlockzinÂs actions.Â  

Â 





[4] Â Â Â Â Â Â Â Â Â  ÂSimilarly, the mere fact that I.F.
suffered from chlamydia and genital warts, which Appellant did not have, does
not make the evidence supporting the judgment so weak as to be manifestly
unjustÂ and clearly wrong.ÂÂ  Thompson
v. State, 85 S.W.3d 415, 420 (Tex. AppÂFort Worth 2002, no pet.).





[5] Â Â Â Â Â Â Â Â Â  Although the State urges us to do so,
we decline to revisit our holding in Rodgers.Â  See McCormick v. State, No.
10-05-00325-CR, 2007 Tex. App. Lexis 183, at *10 (Tex. AppÂWaco Jan. 10, 2007, no pet.) (mem. op.); see also Ex
parte Townsend,
137 S.W.3d 79, 82 (Tex. Crim. App. 2004); Awadelkariem
v. State, 974
S.W.2d 721, 724-26 (Tex. Crim. App. 1998).





[6] Â Â Â Â Â Â Â Â Â  ÂThe Texas Court of
Criminal Appeals has not addressed whether a
beyond-a-reasonable-doubtÂ instruction is required when evidence of other
offenses is admitted during the guilt/innocence phase and reoffered at the
punishment phase of a trial as same
transaction contextual evidence.ÂÂ  Moore v. State, 165 S.W.3d 118,
124 (Tex. App.ÂFort Worth 2005, no pet.).Â  In Moore, the Fort Worth Court Âhesitate[d] to
read into [article 37.07] an exception to the burden of proof for extraneous
offenses or bad acts offered as same transaction contextual evidence.ÂÂ  Id. at 125.Â  The Court did Ânot
believe that there is a ÂnecessityÂ of showing the surrounding circumstances in
order to present a complete picture to the jury at the punishment phase.ÂÂ  Id.Â  We disagree.Â  The evidence assists the jury with assessing punishment.Â  See
Norrid v. State, 925 S.W.2d 342, 349 (Tex.
App.ÂFort Worth 1996, no pet.). Â Neither do we see a reason
to disregard cases holding that a reasonable doubt instruction is not required
at punishment for same transaction contextual evidence.Â Â  Â Â 

Â